Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8461 | **DATE** | 11/29/2000 |
| **CASE TITLE** | Kevin Dvorak vs. Mostardi Platt Associates | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER CORRECTED MEMORANDUM AND OPINION ORDER: The new order changes the language in the original opinion of page 3, line 14 from "his hard drive on Laptop 20" to "misused his company computer." Because this is only a grammatical correction, Defendant's motion for summary judgment is still granted and its motion for sanctions is still denied as moot.

(11) ☑ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 0 1 2000 date docketed | 93 |
| ✓ | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| *JH* | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

KEVIN DVORAK )
)
    Plaintiff, )
)
v. ) No. 97 C 8461
) Paul E. Plunkett, Senior Judge
MOSTARDI PLATT ASSOCIATES, INC. )
)
    Defendant. )

DOCKETED
DEC - 1 2000

## CORRECTED MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the summary judgment motion is granted.

### Facts[1]

The following facts are undisputed unless otherwise noted. Dvorak became employed at Mostardi Platt, ("Defendant"), in August of 1989. (Def.'s 56.1(a)(3) Stmt. ¶ 4.) He worked for Defendant until he was terminated by letter dated May 28, 1997. (Id. ¶ 71.) The facts leading to the termination were these: On March 17, 1997, Dvorak took two weeks off of work so that he could have arthroscopic surgery on his left knee. (Id. ¶ 14.) Upon returning to work on March 31, 1997, Dvorak's supervisor, Macak, directed Dvorak to write a memorandum about his (Dvorak's) view of the Company's future because Macak believed that both Dvorak and the internal group he worked

---

[1] Be advised that Local Rule 12 was changed to Local Rule 56.1 in September of 1999.

for, CEM Services Group, had exhibited poor work performance in recent months. (Id.) On April 1, 1997, Dvorak gave Macak the memorandum. (Id. ¶ 15.) Upon reviewing the memorandum, Macak found it replete with critical comments about the Company and the manner in which it was being run. (Id. ¶ 17.) Macak concluded Dvorak could no longer keep his position with the Company. (Id.)

On April 2, 1997, Dvorak sent an e-mail to Macak and Oswalt, an employee in human resources, explaining that his doctor had restricted him to do "desk work only" for an indefinite period of time. (Id. ¶ 18.) Upon hearing of this, Macak, Oswalt, Platt, the owner of the Company, and Loren, Defendant's labor counsel, met to discuss the appropriate course of action with regard to Dvorak. (Id. ¶¶ 21-23.) Defendant decided that issues relating to Dvorak's work performance and attitude would be delayed until after the matter of Dvorak's medical condition had been resolved. (Id. ¶ 24.) Believing that Dvorak could no longer perform the essential functions of his job, Defendant informed Dvorak that he would be going on a week's leave under FMLA and that the Company would try to get Dvorak on the Company's long-term disability insurance on April 3, 1997.[2] (Id.) Dvorak claims that Defendant sent him on leave either because Defendant refused to accommodate his disability, or refused to let him continue working when he needed no accommodating. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 24.) After Dvorak went on leave, Defendant unsuccessfully

---

[2] Dvorak claims that he believed he was informally terminated on April 3, 1997. (Pl.'s 56.1 (b)(3)(A) Stmt. ¶ 32). However, the evidence indicates that he believed he was still employed until he was formerly terminated by letter on May 28, 1997. For example, Dvorak made efforts to file for long-term disability insurance. (Pl.'s 56.1(b)(3)(A) Stmt. ¶¶ 33, 36). To find Dvorak was informally terminated on April 3, 1997 would require us to draw an unreasonable inference in light of the record. The nonmoving party is only entitled to reasonable inferences in assessing a motion for summary judgment.

attempted to put him on long-term disability. The reasons why these efforts failed are unclear. (Def.'s 56.1(a)(3) Stmt. ¶ 34.)

In late April, Defendant discovered alleged misuses by Dvorak of his assigned computer, Laptop 20, including downloading customer lists onto his computer, sending e-mails to other companies that contained disparaging remarks about Defendant, and using Laptop 20 for his personal use. (Id. ¶ 61.) Defendant made several attempts to meet with Dvorak to discuss the alleged misuses of Laptop 20, but no meeting took place. (Id. ¶¶ 65-68.) Dvorak claims he never met with Defendant because at the time Defendant requested the meetings, he was represented by counsel. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 68.)

As a result of Dvorak's failure to meet with Defendant to discuss the alleged misuses of Laptop 20, Defendant concluded that Dvorak would be held responsible. (Def.'s 56.1(a)(3) Stmt. ¶ 72.) Thus, on May 28, 1997, Defendant terminated Dvorak by letter. (Id. ¶ 72.) The letter stated that Dvorak was being terminated as a result of the Company's complete loss of confidence, commitment and trust in Dvorak as a result of the April 1, 1997 memorandum authored by Dvorak to Macak in which Dvorak was highly critical of both Mostardi Platt and his superiors, and the Company's discovery that Dvorak misused his company computer. (Def.'s 56.1(a)(3) Stmt. ¶ 72 citing Exhibit 54.)

## The Legal Standard

Federal Rule of Civil Procedure 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir. 1992). "If no reasonable jury could find for the party opposing the motion, it must be granted." Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 931 (7th Cir. 1995) (citing Anderson, 477 U.S. at 248).

## **Discussion**

### **Motion for Summary Judgment**

Dvorak has brought this action pursuant to 42 U.S.C. § 12101 et seq., the American with Disabilities Act, ("ADA"). The ADA prohibits employers from discriminating against qualified individuals "in regard to . . . [the] terms, conditions, and privileges of employment" because of their disabilities. 42 U.S.C. § 12112(a). To prevail on his ADA claim, Dvorak must prove that: (1) he is disabled within the meaning of the statute; (2) he is qualified to perform the essential functions of the job; and (3) he suffered an adverse employment action because of his disability. Weiler v. Household Fin. Corp., No. 93 C 6454, 1995 WL 452977, at *3 (N.D. Ill. July 27, 1995), aff'd, 101 F.3d 519 (7th Cir. 1996). The first element is a "threshold" requirement. Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995). If Dvorak cannot establish that he is disabled within the meaning of the statute, Defendant's motion must be granted.

Before we address the merits of Defendant's summary judgment motion, we must address its motion to strike. Defendant alleges that the materials submitted by Dvorak in response to

-4-

Defendant's summary judgment motion are replete with violations of applicable rules and should be stricken. We agree with Defendant that Dvorak's response materials violate Local Rule 56.1, but we disagree that Dvorak's statements should be stricken in their entirety. In order to aid in judicial efficiency, Local Rule 56.1(b)(3) mandates that the opposing party's response to a motion for summary judgment shall contain:

> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon; and
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting material relied upon.

The appropriate remedy for violating Local Rule 56.1 is to disregard the violating evidence. Bradley v. Work, 154 F.3d 704).

Dvorak's 56.1 statements of fact are a model of how such statements are not to be made. Among the most egregious of Plaintiff's violations, on numerous occasions throughout his statements of fact, Plaintiff failed to include any cite to the record. In addition, a large minority of the citations are incorrect, incomplete, or indecipherable. As a result, any paragraphs of facts that we could not find support in the record for were disregarded. We now turn to the merits of Defendant's motion for summary judgment.

### 1. Whether Dvorak is disabled within the meaning of the statute.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. 1630.2(g). Major life activities

include; "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person is "substantially limited" in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(i), (ii). To establish a substantial limitation in the life activity of "walking" for example, a person must show that (s)he in unable to walk, or is significantly restricted as to the condition, manner, or duration under which (s)he can walk, as compared to the average person in the general population. 29 C.F.R. 1630.2(j)(1).

Dvorak satisfies the first ADA definition of disability; that is he has "a physical or mental impairment that substantially limits one or more of the major life activities." Dvorak suffers from spondyloarthropathy, which is a from of systematic arthritis which affects his lower extremities including his knees and feet. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 5.) It causes inflammation and swelling of joints. (Id.) At its worst, Dvorak's disability renders him unable to walk. At its best, Dvorak cannot walk more than a few hundred feet without stopping until his pain subsides. He claims there are times when he needs the assistance of a cane or crutches to get up from a chair and walk. In addition, he is unable to perform routine maintenance at home, such as painting on a ladder, roof maintenance, heavy lawn work, and moving heavy objects. (Id. ¶ 12.) He is also unable to run, jump, crawl or climb without pain. (Id. ¶ 13.) Taken as a whole, Dvorak's spondyloarthropathy substantially limits either his ability to walk, his ability to perform manual tasks, or both, when compared to the average person in the general population.

-6-

Even if Dvorak does not satisfy the first ADA definition of disability, he satisfies the third definition. Dvorak was "being regarded as having such an impairment" by Defendant. "Is regarded as having such an impairment means: Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(L)(1).

Shortly after Dvorak's return to work in late March, 1997, Dvorak informed his supervisors that his doctor had restricted him to "desk work only" for an indefinite period of time. (Def.'s 56.1(b)(3)(A) Stmt. ¶ 23.) Upon receiving this information, Defendant met with outside labor counsel to discuss what the appropriate course of action was with regard to Dvorak's medical condition and alleged poor work performance. (Id. ¶ 24.) Loren, Defendant's outside labor counsel, recommended that any discussion of Dvorak's work performance would be delayed until a later time after the matter of his medical condition had been resolved. (Id.) In addition, because Dvorak's doctors had restricted him to desk work only, Defendant believed Dvorak was unable to perform his job duties and responsibilities. (Id.) As a result, Defendant extended to Dvorak a week leave of absence under the FMLA. (Id.) Furthermore, Defendant suggested that Dvorak may qualify for long-term disability benefits under Defendant's long term disability insurance policy. (Id.)

Taking these facts in light of what Defendant believed Dvorak's job duties entailed suggests that Defendant treated Dvorak's medical condition as substantially limiting major life activities. Defendant admits that Dvorak was responsible for performing both office and field work. (Id. ¶ 4.) Field work involves climbing and lifting. (Id.) In addition, Defendant alleges Dvorak was required to perform the tasks of the employees working under him if one of them was absent. (Id. ¶ 5.) Those tasks included updating, modifying, and performing repairs on equipment as necessary. (Id.)

In addition, Dvorak was required to construct mobile laboratories when needed. (Id.) Considering the tasks which Defendant allegedly required Defendant to do, and considering Defendant believed Dvorak was unable to perform those tasks, Defendant treated Dvorak's medical condition as substantially limiting major life activities treated, i.e., unable to perform manual tasks or unable to walk as compared to the average person in the general population.

### 2. Whether Dvorak is qualified to perform the essential functions of his job.

Defendant argues that, even if Dvorak suffers from a disability protected under the ADA, any responsibility for failure to "accommodate" Dvorak's needs falls on Dvorak. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 29 C.F.R. § 1630.2(m). The term reasonable accommodations means "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." Id. at (o)(1)(ii).

Reasonable accommodation may include "Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices . . . ." Id. at (o)(2)(i). 29 C.F.R. § 1630.2(0)(3) states:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

See also Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996). In Beck, the Seventh Circuit teaches that the concepts of good faith and reasonable effort must be used in assessing responsibility for the breakdown in the interactive process. Id. at 1136. A party that fails to communicate by way of initiation or response may be acting in bad faith. Id.

Plaintiff argues that Defendant failed to make reasonable accommodations for his disability. (Pl.'s Resp. to Def.'s Summ. J. Mot. at 6.) According to a note from Dvorak's doctor, Dvorak was restricted to "desk work only." (Def.'s 56.1(b)(3)(A) Stmt. ¶ 18.) Plaintiff conveyed this information to Defendant on April 2, 1997. (Id.) He alleges that he requested an accommodation to be restricted to "desk work only," a request that had been honored on previous occasions when his arthritis would "flare up." (Id.) Defendant does not dispute that Dvorak requested desk work only. (Id.) However, Defendant's "accommodation" was to send Dvorak on sick leave for one week under the FMLA, instead of allowing him to stay at work as he wished. (Def.'s Summ. J. Mot. at 12.) The other "requests" for accommodations that Defendant cites are a letter of inquiry dated April 4, 1997, which contained no accommodation request at all, and a letter dated April 28, 1997, which was simply a demand by Dvorak that he be returned to his job, but omitted any reference at all to the fact that his physician had lifted the medical restrictions in the leave of absence accommodation by Defendant in the first instance.

In response to Defendants arguments, Dvorak asserts that he was able to perform all the "essential functions"[3] of his job without any accommodations other than those he had received on previous occasions. (Pl.'s Resp. to Def.'s Summ. J. Mot. at 6.) Because the parties dispute what the

---

[3] "Essential functions means the fundamental job duties of the employment position the individual with the disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

"essential functions" of Dvorak's job were, it is impossible to determine whether Defendant's accommodation was reasonable. (Compare Def.'s 56.1(b)(3)(A) Stmt. ¶¶ 4-5 with Pl.'s Resp. to Def.'s 56.1(b)(3)(A) Stmt. ¶¶ 4-5.) Therefore, we must conclude that there are genuine issues of material fact precluding summary judgment concerning whether Dvorak was qualified to perform the essential functions of his job with or without reasonable accommodation.

### 3. Whether Dvorak suffered an adverse employment action because of his disability.

Dvorak has alleged that Defendant's decision to terminate his employment was based on discrimination. In Kariotis v. Navistar Inter. Trans., 131 F.3d 672 (7th Cir. 1997), the Seventh Circuit enunciated the standard by which a plaintiff must rebut an employer's claim of lawful termination. The court stated:

> To successfully challenge the honesty of the company's reasons (sic) [the employee] must specifically rebut those reasons. But an opportunity for rebuttal is not an invitation to criticize the employer's evaluation process or simply to question its conclusion about the quality of an employee's performance. Rather, rebuttal must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination. In other words, arguing about the accuracy of the employer's assessment is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest.

Id. at 677(internal quotations and citations omitted).

Defendant claims that it terminated Dvorak's employment for the following reasons: (1) the Company's complete loss of confidence, commitment and trust in Dvorak as a result of the April 1, 1997 memorandum authored by Dvorak to Macak in which Dvorak was highly critical of both Mostardi-Platt and his superiors (Def.'s 56.1(a)(3) Stmt. ¶ 72 citing Exhibit 54); and (2) the

Company's discovery that the hard drive on Laptop 20 which was assigned to Dvorak had been tampered with. (Id.)

A. Whether Dvorak has successfully rebutted Defendant's contention that Dvorak was terminated as a result of writing the letter of April 1, 1997.

Dvorak does not deny criticizing present operations in his memorandum of April 1, 1997. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 16.) His rebuttal is premised on the proposition that he was tricked into suggesting changes and his suggestions purposely misunderstood as criticisms in order for Defendant to come up with a reason to terminate him. In other words, Dvorak alleges that Defendant asked for his critique solely as a pretext to terminate him. In addition, because Defendant's decision to direct Dvorak to write the memorandum was based at least in part on revenue deficiencies on the part of Dvorak and CEM Service Group generally, Dvorak suggests that we cannot accurately address whether the reason provided is honest because by court order we held that all Defendant's financial plans, financial reports, financial documents, and sales information for each of Defendant's departments for the years 1994 through 1997 irrelevant to the issue of pretext. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 9.) We disagree that we are barred by our order. The record provides a sufficient basis upon which to hold that Defendant's directing Dvorak to draft the memorandum was not a pretext to terminate him. Dvorak admitted in his response to Defendant's 56.1 statement that Macak believed that Dvorak's productivity numbers were far below what they needed to be. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 9.) Whether Dvorak's numbers, or those of the CEM Service Group in general, were actually down is irrelevant. What is relevant is the undisputed fact that Macak believed them to be down and requested a memorandum on that basis. "[A]rguing about the accuracy of the employer's assessment

is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons are honest." Kariotis, 131 F.3d at 677. Based on the fact that Defendant had reasonable grounds to request the memorandum, and the fact that Defendant honestly believed that the purpose of the memorandum was for Dvorak to give suggestions on improving company productivity, Macak's directing Dvorak to write the memorandum was not a pretext to terminate him. Dvorak's memorandum revealed an employee who was less interested in improving the Company's production than in complaining about real or imagined ills. For example, Dvorak wrote:

> I want to start out be (sic) reiterating my definition of insanity. Insanity is doing the same thing you have always done and expecting things to change! Mostardi Platt has developed a new definition. Mostardi Platt is doing less today then (sic) it has ever done and is expecting things to change. On top of everything else every time we turn around we are burdened with tasks that make us less efficient.

(Def.'s 56.1(a)(3) Stmt. ¶ 15.) The Defendant says this memorandum provided a reason to terminate him and Dvorak has shown nothing to counter this position.

### B. Whether Dvorak has successfully rebutted Defendant's contention that Dvorak was terminated as a result of his misuse of Laptop 20 which had been assigned to him.

Defendant alleges that part of its basis for terminating Dvorak was his misuse of Laptop 20. (Def.'s 56.1(a)(3) Stmt. ¶ 72 citing Exhibit 54.) Specifically, Defendant contends that Dvorak's computer's hard drive included a copy of the Mostardi Platt customer list notwithstanding a prior specific directive that Dvorak not have a copy of this list, and that Dvorak's mail communications to third-parties were openly critical of Mostardi Platt. (Id.) Due to the fact Dvorak failed to offer any explanation, and since the computer was assigned to Dvorak, the Company concluded that

Dvorak was responsible for unauthorized use of the computer and disloyalty to the company. (Id.)

Dvorak attempts to rebut Defendant's contentions by alleging that there is evidence that Laptop 20 failed to function on numerous occasions (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 57); the loss of information on the Laptop could have resulted from it getting dirty or being dropped, or by accident (Id.); other people could have used the Laptop between April 3 and April 8, 1997 (Id. ¶ 58); Dvorak never recopied the customer list after he had been told not to do so (Id. ¶ 61); company-wide use of Laptop 20 is apparent by the number of web sites that appear on the log that Dvorak has never heard of (Id.); Dvorak was given permission to use Laptop 20 to access the Internet from Tom Mostardi (Id.); there were no disparaging remarks on any e-mails on the computer (Id. ¶ 77); several employees testified that they were not given instruction regarding the proper scope of computer use by an employee (Id. ¶ 64); Dvorak counters his failure to meet with Defendants to discuss these problems when asked to do so by noting that he was acting on advise from counsel. (Id. ¶ 67.)

Upon looking at these facts in the light most favorable to Dvorak, we do not find rebuttal evidence sufficient to withstand summary judgment motion. Dvorak has pointed to no "facts tending to show that the employer's reasons for some negative job action are false." Kariotis, 131 F.3d at 677. The only rebuttal evidence that Dvorak has come forward with is evidence attacking the "accuracy of the employer's assessment," and indeed presents little of that. Id. As noted above, the Seventh Circuit has held that such evidence is a distraction, "because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest." Id. The Defendant had substantial evidence that Dvorak had disobeyed its instructions and was disloyal. Dvorak was given an opportunity to discuss this evidence and declined to do so. He

has failed to rebut or even case doubt on Defendants' legitimate non-pretextual grounds for termination. As a result, Defendant's motion for summary judgment is granted.

## Conclusion

For the reasons stated herein, Defendant's motion for summary judgment is granted and its motion for sanctions is denied as moot.

ENTER:

_____
UNITED STATES SENIOR DISTRICT JUDGE

DATED: _11-29-00_